being examined in chambers before a register. He does not occupy such an anomalous position that would entitle him to assistance in one case, that would not even be claimed for him in another. This point has already been passed upon in the Case of Fredenburg [supra], and in Re Feinburg [Case No. 4,716]. Nor can the claim be considered stronger because the examination of the witness may establish a liability on his part to the bankrupt estate. The very end and aim of an examination might be to establish precisely such a liability, (which right of examination is passed upon by the court in Re Earle [Id. 4,244], and in Re Fay [Id. 4,708]) and however much such person under examination might need legal assistance and counsel when a party to proceedings in another forum, it could certainly not be allowed to follow him into the stand and take position by his side when he is called as a witness.

3d. I think the witness should be compelled to answer question No. 9. Section twenty-six of the act gives to creditors the right to examine the bankrupt upon all matters relating "to the disposal or condition of his property; to his trade and dealings with others, and his accounts concerning the same; to all debts due to or claimed from him; and to all other matters concerning his property and estate, and the due settlement thereof according to law," and the court may in like manner require the attendance of any other person as a witness.

[The bankrupt act gives the fullest power to creditors to get at all the facts connected with a bankrupt estate, and this question being in the regular line of investigation concerning an important and large transaction with the bankrupt is one which the creditor is entitled to have answered. Which facts, questions certified, and opinion, are respectfully submitted this 8th day of April, 1872.] [2]

BLATCHFORD, District Judge. I concur in the views of the register.

[For a prior proceeding in this litigation, see Case No. 12,581.]

## Case No. 13,583.

In re STUYVESANT BANK.

[See Case No. 12,919.]

## Case No. 13,584.

In re STUYVESANT BANK.

[See Case No. 12,919.]

STUYVESANT BANK (SIXPENNY SAV. BANK v.). See Case No. 12,919.

STUYVESANT, The GERARD. See Case No. 5,356.

STYLES (LYLES v.). See Case No. 8,625.

[2] [From 7 N. B. R. 445.]

## Case No. 13,585.

SUAREZ v. The GEORGE WASHINGTON.

[1 Woods, 96.] [1]

Circuit Court, D. Louisiana.    Feb. 20, 1871.

SHIPPING—BILL OF LADING—FREIGHT—CARRIAGE BY PURSER—BAILMENT.

"A." was the purser of a steamship about to sail from New Orleans to New York. A package marked with his name was delivered to him for which he gave a bill of lading, whereby he agreed to deliver the package to L. in New York, on payment of the value thereof, and in default of payment to return the package to the consignor. The bill of lading indicated that freight had been paid on the package, but no freight was in fact paid or tendered, nor was there any agreement or expectation that freight was to be paid. The package was not placed on the ship's manifest nor stowed with the other freight. "A." was not authorized to sign bills of lading. He delivered the package to the proper person in New York, but neglected to collect its value. Held, that the package was delivered to "A." as the bailee of its owner and was not delivered to the steamship, and that the latter was not liable for its value.

[Appeal from the district court of the United States for the district of Louisiana.]

In admiralty.

E. W. Huntington, for libellant.

T. J. Semmes and Robert Mott, for respondent.

WOODS, Circuit Judge. On the 31st of July, 1868, E. S. Allen, the purser of said steamer signed and delivered the following receipt: "New Orleans, July 31, 1868. Received in good order and condition from P. Manich on board steamer George Washington, one box said to contain 6,000 cigars, marked E. S. Allen, to be delivered to Mr. E. S. Lagram in New York on his payment to Mr. T. Masich of ($660) six hundred and sixty dollars, or in case of nonpayment by him, for me to return said cigars to Mr. F. Masich, New Orleans. (Signed) E. S. Allen, Purser." Freight collected. The libel alleges and the proof shows that Masich was only the agent of libellant in the matter; that the box actually contained 6,000 cigars; that they were the property of libellant; that they were conveyed to New York and there delivered without the collection of said sum of $660. Libellant claims that he has a lien on the steamer for the said sum, and that her owners are jointly and severally liable to him for that amount.

The respondent Moulton answers by way of defense: 1. That Allen did not receive the box of cigars or give the receipt as agent of the owners of the steamer, but undertook to carry said box to New York and deliver it to Lagram as a personal favor to Lagram; and no freight was paid or agreed to be paid thereon, of which Masich had notice when he delivered the box on board the steamer. 2. That the acts of said Allen in the premises were done out of the scope of his employ-

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]